Companionship of University of North Carolina Next case is 2007-1404, Carrico Farmer, Pseudico vs. Forest Labs. Mr. Hurst, whenever you are ready. May it please the court, my name is James Hurst and I'm here on behalf of Carrico. I want to discuss three cases that we believe control the outcome of this appeal. The Novartis and 3M cases from this court, and also the Madman case from the Supreme Court. In Novartis, this court held that Article III jurisdiction exists whenever a patent owner sues on some, but not all, of the Orange Book patents. And in fact, this court held that that was dispositive of the jurisdictional question. But the facts in Novartis are not the facts in this case. The other side says, well that is taken out of context whether you say that or whether you say the statement is dicta. The fact is that the facts in this case are quite different, are they not, from the facts in Novartis? The facts are different because in this case we have a covenant not to sue. But that covenant not to sue does not in fact eliminate the controversy that this court found in Novartis, which arises from the owner's legal right to obtain approval. But in Novartis they talked repeatedly about the fact that there were these other patents out there. And that created the legal uncertainty for the parties. That's not the situation in this case, right? I think that is the situation. Right now, because we have a situation where Forrest put two patents in the Orange Book. The 712 patent and the 941 patent. The 712 patent will not expire until 2012. As it stands right now, the 941 patent, which is out there, will absolutely positively delay my client's market entry by six months unless this lawsuit goes forward. That is the situation we're dealing with. My legal right to obtain approval in my ANDA is being blocked by the 941 patent, which Forrest listed in the Orange Book. Remember, this is your typical case. In your typical patent infringement case, a covenant not to sue ends the inquiry because it ends all possible injury that the accused infringer may suffer. Here, the covenant not to sue does not, in fact, do anything except prolong and confirm the injury. But the focus, it seems to me, shouldn't be on the injury. It should be on what the controversy was. Because that's what the district court held. No jurisdiction because there's no case of controversy in light of the covenant. At least I think that's what the district court said because the judge didn't write an opinion. So we don't know exactly what he said. But he did speak in terms of didn't he have jurisdiction? He said no case of controversy. He seemed to rely on the fact that there was no threat of a lawsuit. That's what he seemed to rely on. And that obviously is not relevant now that the reasonable apprehension test has been discarded. But let me answer your question, Your Honor. Two points I'd like to make. You say the focus has to be on the controversy. And here there is, in fact, a controversy over infringement. Why? Merely because one party to a dispute declines to fight does not mean there is no controversy. Sometimes people decline to fight because they think they can win without fighting. That does not mean there is no controversy here. Forrest has carefully declined to agree that we don't infringe. We claim we don't infringe. They take no position. But what difference would it make? I mean Judge Gallarza asked this of the other party. Even if they stated that in the absence of a court decision or a court finding, I mean you say that in your brief, but where would that get you? I think if they in fact said in the covenant not to sue that they agree that we do not infringe, that would be the basis of the dismissal. And therefore, I think under the law, I would trigger the exclusivity that right now is standing in my way. You think that would satisfy the statutory provision about a decision by the court that the patent is not valid or not? I believe that the sole basis for the dismissal is their agreement that we do not infringe, i.e. there is no more controversy. I think that would in fact satisfy the statute. But moreover, why would the covenant not to sue be the same extent? Why would it not be the same as if they said you don't infringe? Because they have not in fact, to Judge Friedman's point, they have not in fact conceded the key point they need to concede, which is that I don't infringe. They've carefully not done that. Why? Because they want to confirm the injury, i.e. my delayed end approval by a minimum of six months, but could be as long as 16 months. But if they're right with regard to the issue of not suing, are they admitting that there is no infringement? Or are they just saying that we will not exercise our rights to sue you? That's all they're saying. They will not exercise their right to sue. That is all they're saying. So it's a non-exclusive license type of an arrangement? Yes, I think that's probably a correct characterization. Now, where does the 941 patent stand? Right now it stands unchallenged. It's in the Orange Book because— Was that part of the covenant not to sue? That was the covenant, the covenant not to sue in the 941 patent. They put it in the Orange Book based on, by the way, what the statute requires, a conclusion that can be reasonably asserted against any and-the-fault filer. They've not walked away from that statement. They are still saying, and you can't put an Orange Book in the patent unless you take that position, it can be reasonably asserted against any and-the-filer. They've never walked away from that position. But your client's not the first filer. IVEX was the first filer? IVEX was the first filer. And that's where the bottleneck occurs, right? Because IVEX right now, they've failed to prevail in the 712 patent. So their exclusivity won't begin until they actually launch because there's no court decision possibility for them right now. And so if they launch their product in 2012, that's when the 180 days starts to take, and I'm delayed by at least 180 days. But if Forrest were to settle with IVEX, I could be delayed until 2023, the expiration of the 941 patent. But two points I wanted to make on your question about, is there a dispute on infringement? Yes, there is. I say I don't. They refuse to take a position because they think it's to their advantage. But the 3M case addressed this issue quite directly. Remember what happened in 3M? In 3M, there was in fact an agreement between 3M and BARD that there was no infringement. So 3M went one step further than Forrest is willing to go. They said there's never going to be an issue because we agree that BARD is not infringed. And here's what the court said. If this case did not involve the Hatch-Waxman amendments, appellants might be correct that a case or controversy ceased to exist in the course of the litigation when 3M, here's the key part, when 3M represented that it no longer claimed infringement by BARD. Forrest hasn't even gone that far. The problem I'm having with the 3M analogy is that 3M seems to me a different case. The only controversy there was on the form of the dismissal. And that seems to me different than here asking the court to grant subject matter jurisdiction to decide the merits of the case. Isn't there a difference between the two? Well, actually there's no difference at all because in fact that's our dispute here. We have a dispute over the form of the dismissal. Below, the district court dismissed without prejudice because of a lack of subject matter jurisdiction. In 3M, that was precisely the case. But you don't want the court here to dismiss it. You want the court here to adjudicate the case on its merits. Yes. I think I misspoke. In 3M, what 3M asked for actually was on that case. They asked the district court. They said, district court, I no longer claim that BARD infringes. We therefore have no further dispute. Dismissed without prejudice for a lack of subject matter jurisdiction. The district court declined and so did this court. So we went up and we argued the issue that's now before your honors. We argued this issue. And the issue was whether is there subject matter jurisdiction to do anything other than dismiss without prejudice given the fact that the two parties at the tables, BARD and 3M, no longer have an agreement, a disagreement over infringement. We both agreed that we didn't infringe. The question in this case isn't whether there's subject matter jurisdiction. It's whether there's any case of controversy jurisdiction, which may or may not be the same issue. Well, it was case of controversy jurisdiction. That was in fact what was being discussed in 3M, case of controversy jurisdiction, Article III jurisdiction. That was in fact the issue, your honor. And it was addressed quite squarely in the opinion. It was argued by the parties and it was one of the key points of contention. 3M said no controversy, dismiss without prejudice. BARD said, look, we don't have a disagreement over infringement, but there's real consequences with respect to the timing of the ANDA approval. And this court held, and I think the case is indistinguishable, this court held that there was in fact a controversy that required resolution and therefore the case was resolved on the merits, which advantaged BARD because we got an earlier ANDA approval. This case is also, I believe, not distinguishable from Metamune because in Metamune there was a patent license, okay? But we all know that a patent license is in fact a de facto covenant not to sue. And that means Metamune faced no threat, zero threat of infringement liability, none. And yet, because of collateral consequences, the Supreme Court said that there was a controversy giving rise to Article III jurisdiction. That's all that's happening here. All Forrest is doing is essentially saying, I'm not going to sue you in the future. But Metamune had that same advantage. They did not face a threat of a lawsuit in the future. The whole point of the case... Unless they start paying their license fee. Yes. And there's no such caveat here in the connection with the covenant not to sue, correct? True, but remember what the court was deciding. Metamune said, I'm going to keep paying my royalties. The threat of a potential lawsuit in the future is non-existent because I will keep paying my royalties. So we are faced with the same situation. Metamune had a zero chance of patent infringement liability, and yet there was a case for controversy under Article III. CARICO has zero chance of a future patent infringement case, and yet I believe, just like in Metamune, there ought to be Article III jurisdiction. Can I ask you something? The trouble I'm having with this case is the disconnect between what will actually be litigated, what you're fighting for is the right to litigate, the question exclusively of infringement. And what you're saying your harm is is not the dispute over whether or not the product is infringed or not infringed. The harm is the barrier to the market. And there seems to be a disconnect. I mean, in the normal case, you would acknowledge that the dispute, the injury, everything has to do with what you're actually litigating. And in this case, you're trying to sever what is actually being litigated from the actual harm that's occurred. You understand my problem here? I do, but isn't that just the standard Article III analysis? The three questions are, has there been an injury in fact? Here, absolutely, minimum six-month delay. Is it traceable to Forrest's conduct? Yes, because they put the 941 patent in the Orange Book. Weren't they required to put it in? If they want protection. In fact, they were required to put in any patent that they could reasonably claim could be asserted against Amanda. That wasn't something that they, that was their action. Was it required by the statute for them to do that if they came to that conclusion? Yes. But this cannot, our injury, just as a final point here, our injury cannot be laid at the feet of Congress. Forrest put the 941 patent in the Orange Book. They did that. Congress didn't do that. Forrest selected... But Congress is the one that requires that you have an adjudication by the court. That's Congress, right? But remember, but Congress, one reason this can't be laid at the feet of Congress is somebody asked earlier, in the earlier argument, well, shouldn't Congress just remedy this problem? Because there's a bottleneck problem. Clearly, there's a bottleneck problem. Shouldn't Congress just remedy it? Well, that's what they did. They enacted a statute called... Well, wait a minute. You said Congress remedied... I don't see anything in the statute that relates to covenants not to sue. The problem that's been created in this area is the covenant not to sue. And the question is whether if the covenant not to sue is defeating the objective of Congress in Hatch-Waxman Act, isn't the proper remedy for Congress to amend Hatch-Waxman to make it clear that the giving of a covenant not to sue is not going to prevent the district court from exercising the declaratory judgment jurisdiction? I'm not sure how Congress would accomplish that if a covenant not to sue eliminates Article III controversy, even though I'm suffering the injury under the statute. But if a covenant not to sue eliminates Article III, and Article III controversy... Well, it's not just a covenant not to sue. It's a covenant not to sue in all the circumstances of the case. And I assume Congress at least could try. It's conceivable some court might say, that's not good enough, that doesn't affect Article III jurisdiction. But a court might say, well, Congress has created this complex system and it can define the boundaries of it. But at least that was their intent, right? Because when they enacted the Civil Action for Patent Uncertainty, the main goal of the statute was to clear the kind of bottleneck that I'm trying to clear here today in court, plainly. And Novartis tells us this. Look at congressional intent. Congressional intent was to allow for the clearing of these bottlenecks. If this court were to rule, covenants not to sue automatically eliminate the ability of generic to clear that kind of bottleneck, you have said that they failed, number one. And I think you're saying they can't succeed. Because, as Judge Prost pointed out earlier, if a covenant not to sue stops the ability of anybody after the first filer to try to unclog the bottleneck, well, that would be the case always and forever. And there's really nothing Congress can do because they can't change the time. They can't give you Article III standing to sue, but they can certainly correct maybe the error that's in the statute, couldn't they not? Couldn't they just say that under the statute we now determine that a covenant not to sue is in fact an admission of non-infringement and it's an action which is required in the court, incorporated in the court order, and it's over and done with? If they took that step, I guess you're right, they could probably make it simpler. But they have already taken steps to do just this. And the covenant not to sue... Well, I don't know what you mean, just this. The bottleneck, clearing up the bottlenecks. Yeah, but there are numerous instances where Congress doesn't quite get it right on the first try. And so you're right. I mean, it may have turned out that what they drafted didn't contemplate all of the scenarios. And typically the answer to that is Congress has to go back, now that they've seen a scenario that was not contemplated in the first answer, and fix it. But to just say, we know what Congress intended in the first place, so therefore the courts ought to step in and fix it for Congress seems to me possibly really stretching what our authority is vis-à-vis Congress. I'm not sure, Your Honor, because remember, they set up this entire framework, which is very complicated. But they said that my right to ANDA approval depends on my ability to clear the patents away through a finding of infringement and invalidity. So they set up... Congress can, in fact, create legal rights that create controversies and therefore create standing. That's what they did. They said that my right to get approval on my ANDA depends on my ability to go through these patents. And I'm taking advantage of the very civil action that they've identified in the statute to do just that. Are you limited by the 30-month period? You heard all the discussion about the 30-month in the previous case. Is that the same restriction that you're basing your bottleneck on, or is it still the 180-day time period? Our bottleneck is only the 180-day. You don't have a 30-month because you weren't the... This was a D.J., right? This was a D.J. This was a D.J. There was no counterclaim by... Do you have a position on the 30-month issue that you heard argued beforehand? I do. It's the exact same analysis as the 180 days because, remember, it's just a different injury. So if I'm right that a relevant controversy exists because the other side has not declined to admit that I don't infringe, then it's another injury on top of the 180 days. Thank you. We'll restore your rebuttal time. Why don't you give Mr. Flattman the same amount of time that we gave Mr. Hurst? Good morning, Your Honor. Gerald Flattman on behalf of the Appalachian Forest and Wildlife Care. Your Honor, Carrico's argument is a policy argument, really, that's in search of a cause of action that's not legally cognizable, and therefore it's really a search for an advisory opinion on the cause of action that would have been cognizable in the first place to account for infringement. But it's not a... Go ahead. Sure. Why would they have an injury because they could not get the market? There may very well be an economic injury here. I would submit to you that it is speculative because it could be based, as we see in their brief, on any number of a series of events involving all sorts of intervening actors, including the FDA, including the other generic filers and others. But that injury isn't traceable to a cause of action that they've pled. The cause of action that they've pled is a single count of non-infringement that was mooted by the covenant not to sue for infringement. There's no other count in dispute in the case. But the upshot, if they win, if they were to prevail on non-infringement, they get to go on the market. That's a relief that isn't changed by the covenant to sue or not to sue. It's a potential alleviation of an economic injury, and that economic injury, though, is the result of the statutory scheme, of the scheme that the Congress has put in place. It is not the result of the... Aren't you obviating the congressional scheme by granting the covenant not to sue so there can be no judgment against the patent? No, Your Honor. We're exercising our right, as any litigant has in any action, not to contest a specific claim, not to pursue a specific claim in a court of law. And now that we've exercised that right, there can be no determination of non-infringement. It's the symmetrical rule that we use for all declaratory judgment jurisdiction determinations. There must be jurisdiction over the claim that the defendant, the patentee defendant in this case, could have brought in order for there to be jurisdiction over the rear image claim. That's part of this court's jurisprudence in the microchip case. It's part of this court's jurisprudence in the recent post-Metamine and Benetech case. And it's still the law today. But you may be right on legalities, but this isn't your normal case. Under Hatch-Waxman, the results, the consequences of your doing a covenant not to sue are far different than the consequences of a covenant not to sue  Not necessarily, Your Honor. There are other cases in which covenants not to sue have been granted. For example, the microchip case, which was not a Hatch-Waxman case, where there was a material economic injury that was going to be suffered by the DJ party. It was different in kind. But there's nothing like the economic injury here asserted, which is a delay in getting to market, which we're told Congress wanted to prevent in Hatch-Waxman. Well, Congress wanted to do a number of things. And one of the things it did was promote the interest of the first filer. And it set up a scheme, a relatively complicated scheme, to do so. CARACO chose not to be the first filer here and to take its chances with regard to triggering or doing an end around the first filing status of IVACS, which is the first filer. Which is exactly what Congress contemplated, that non-first filers would have that right. Your Honor, it contemplated that in two instances. In instances where there could be a court decision of invalidity or non-infringement. And Congress was aware, as we're told by the D.C. Circuit, in the Apotex v. FDA case, that there would be instances in which, in Congress's word, there would be instances in which there would be no jurisdiction over a claim and therefore no trigger of 180 days. So if every generic were to do what Forrest did here, which is to issue a covenant not to sue, it would effectively preclude anyone other than the first filer from challenging the patent or challenging the infringement. And you think that's consistent with what Congress contemplated when it passed Hatch-Waxman? I can only turn again to what the D.C. Circuit said about the consequences of the way Congress set up this statute and the way it set up the parallel patent certainty statute. It set it up with two events, two causes of action, two triggers. A determination by a judicial body of non-infringement or invalidity. And it also said very plainly, subject to the limits of Article III of the Constitution in the patent certainty statute, the D.C. Circuit has concluded that Congress was aware of these limitations on the constitutional application of this law. But in every other implementation of a covenant not to sue, there's some cost. If the person goes on the market, they're not charged with infringement. In this instance, the covenant not to sue has no such effect. It has no effect, because by definition, the whole infringement is just a word that Congress invented. It's not real infringement. But it does have such an effect, Your Honor. It's an irrevocable covenant going into the future. So when and if CARICO launches, they cannot be sued. Which might never take place. Might never take place if the 180-day time period doesn't trigger. It will take place eventually. Eventually. 15, 20 years. Or 2012 plus 180 days, Your Honor. So essentially you can continue mining the coal for a long time without any challenge. Without any challenge. Well, there's already been a challenge by the first filer. And the first filer lost that challenge. This court affirmed. The first filer happens to be the first filer on both paths. But as Judge Prost points out, is that what really the hatch-waxman structure meant to do in order to bring generic products to market? And then all of a sudden that ability is removed by a covenant not to sue? It's part of it. Which really doesn't mean anything. It does not mean anything at all. It's a piece of paper which delays the entry to market for a long period of time. It means that my client can never sue them for infringement damages going forward. But they can't bring any product to market. So it's totally an innocuous piece of paper. As counsel mentioned, they could go to market as early, even under one of his scenarios, 180 days after the expiration of the first patent. Is there any provision at all that contemplated that if the first filer publicly announces that it's not going to bring this product to market, is there any way following that you can get some sort of relief saying in these circumstances the 180-day period should no longer be operative? I imagine there could be such circumstances. I don't think that that's built into the current scheme. It may be something that Congress wants to do as it continues and has continued over the years to modify Hatch-Watt's way. I think very importantly the scenario that you mentioned, the 180 days never being triggered if covenants not to sue are given, has already been changed in large part by Congress in the 2003 Medicare Act amendments where it changed the 180-day exclusivity provisions from what used to be called a patent-based approach where there's 180 days attached to each patent that's in the Orange Book to a product-based approach where there's 180 days attached to the product that can be triggered with a challenge to any of the patents. I can assure you, Your Honor. But that right then gets eliminated by the covenant not to sue. Well, not in that instance. In that instance, I would have to be rather selective about my covenants not to sue as the patent holder. And if I were to give a covenant not to sue on every patent that I've listed in the Orange Book, I suppose your hypothetical would be correct. For the particular product. Correct. But that would not happen in practice. Well, it happened in Merck, the previous case. It wouldn't happen if a party had an enforceable patent that it had taken out against the first filer and won on appeal in this court, for instance, which is the case here. But the key is that we should be focused on the cause of action. The Supreme Court precedent tells us that. If we go back to the Aetna case, which is cited in our briefs, it really sets the standard here along with Maryland casualty. And it says that we don't look to the parties and their particular situation to determine whether there's DJ infringement. We look to the cause of action that they have pled and whether there is Article III jurisdiction over that cause of action. Here there cannot be, Your Honor. The triggers that were built into the Patent Certainty Act and the triggers for 1A days are simply non-infringement and invalidity. There is no separate cause of action to trigger the 1A days. There is not a cause of action that says a party has a right to trigger the 1A days. So why is this case different from the 3M Minnesota mining case? This case is different from 3M in a number of ways. In 3M, 3M first of all brought the patents, the patent infringement suit. The issue was joined. And 3M agreed that it did not infringe. And then it was simply a question as to what the form of judgment would be and whether there was jurisdiction concerning the form of judgment. The form of judgment that 3M was looking for in that case, a dismissal without prejudice, versus the summary judgment form that was ultimately entered. This is a completely different case. The issue hasn't been joined. There's been a covenant not to sue. There is no admission of infringement. There is no decision of infringement. The other cases are likewise different. The Novartis case did not involve a covenant not to sue for infringement of the only count. But the language in Novartis is quite broad in what it suggests is required for establishment of subject matter jurisdiction. The court in Novartis does talk about three factors that it considers in the language of that case. I thought it was five factors. Well, three that it had considered dispositive. And all of those factors are present in this case. They're not. They're not anymore. Not in reality. Not in effect. One of those factors is, as the court noted in the Novartis decision, one of those factors is the listing of an Orange Book patent that could be infringed. And it talks about the purpose. The decision talks about the purpose of Orange Book listing, which is to put people on notice that they can be sued for infringement. And that's one of the factors. I know the patent's still listed. In effect, it has no effect as an infringement tool against its defendant. It no longer exists with regard to the only cause of action that's been pledged. And this court could not have meant that those factors were dispositive in the sense of sending off litigants to fight over an advisory question, to fight over a moot issue. But it's clearly not moot, and it's clearly not advisory, because there's clear relief that the party can obtain if it gets its decision on infringement, assuming it prevails. And there's a court finding that it's not infringed. It's a hypothetical question, Your Honor. The only count is non-infringement. We say we will never contest infringement. But the result is they can go on the market, whereas in the absence of that, they can't go on the market. There's relief to be had here, right? There's a distinction, Your Honor, between the trigger and the relief. The cause of action is the trigger. There is no Article III jurisdiction over that cause of action. Yes, there's potential injury. Yes, there's potential injury. The cause of action is the trigger? Let's step back a minute. You said the cause of action is the trigger? The cause of action is the trigger that Congress... Or the judgment, the trigger. I'm sorry, Your Honor. To be more precise, a judgment, a decision by a court on the expressly congressionally stated cause of action is the trigger. So if there's no judgment, there's never a trigger. So if you can postpone the issuance of the judgment, then you can postpone the trigger forever. Well, not forever, Your Honor. Until the expiration of the patent. This tariff code could have been first filed. It could have moved for invalidity of this patent, which it did not. It shows to plead a single count of non-infringement. Are you suggesting the result would be different here if they pleaded invalidity? That your position would be different? I think the answer is no. There is some jurisprudence of this court that would suggest that it's possibly yes, dissenting opinions by some members of the court in some of the major decisions that we've talked about today. But I think the answer would be no. I think it's a situation distinguishable from the cardinal canonical situation that certain members of the court have cited in support of such a proposition. If the cause of action is gone necessarily, what is in essence a mirror-image defense to the cause of action should also be gone. But here the issue is a lot cleaner. But isn't it a continuing injury because it cannot come to market? And the trigger point can never be taken? It may be an injury, Your Honor. But it's speculative in terms of how long it may be. But it is an injury. I think it's an economic harm to them. But is it an injury, an economic injury? An economic injury, yes, but not traceable. Not traceable to me, to my client. Directly traceable to the covenant not to sue? Not directly traceable, Your Honor. It's traceable to the statutory scheme. It's traceable to the fact that they chose not to be the first filer and to forego that opportunity. It's traceable to their actions in light of the statutory scheme. The covenant not to sue is but one element of that. And that's a legitimate decision by my client not to spend the millions of dollars that I would have to spend in litigation of the second filed patent and looking at the statutory scheme in light of the economic situation. And it's entitled to do that as any litigant. And the cases tell us that as long as we cannot find the mirror-image claim, in other words, my client's claim for infringement, there can be no D.J. jurisdiction. That's embedded in Supreme Court and federal circuit law, in the Aetna decision, in the recent decision in nucleonics, and also in the sports microchip decision. All outside of the hatch-waxman environment. Well, we haven't dealt with the hatch-waxman situation in those cases. This could be the first case. It could be. But you've dealt with the same cause of action many, many, many times, and it's important to be clear on that. The cause of action is still a claim of non-infringement. That's all it is. If you look at Count 1 of the complaint, it is not a claim to trigger 180 days. It is not a claim for anything else except non-infringement. This court has ruled many times that jurisdiction over a claim of non-infringement does not exist in the presence of a covenant not to sue. Any other questions that I might be able to address, Your Honors? Yes, I have a question for you, quite different. Are you still maintaining that your opponent's appeal is frivolous? Your Honors, I think that... I think that calls for a yes or a no answer. I just want to know whether, in the light of the argument today, you still contend that your opponent's appeal is frivolous.  Pardon? Well, I don't need an answer. You're still maintaining that it's frivolous? Both facially and on the grounds of the brief. Let's say yes or a no answer. You maintain it. Thank you. Any more questions? Thank you very much. Mr. Hurst? You have three minutes. Thank you, Your Honors. Counsel said that if there is no mirror image cause of action, there cannot be a case for controversy. That cannot be true because in Meadowmune, there was no mirror image cause of action. Meadowmune had given a license to the accused infringer and therefore could no longer sue for either infringement or sue relating to the validity of patents. There's no mirror image cause of action in Meadowmune, so that cannot be the law. Number two, three out. But you did not sue for validity. You only sued for non-infringement. We did not. It would have made no difference whether we sued for a declaration of non-infringement or patent invalidity, but in fact, we only sued for a declaration of non-infringement. Second, on 3M. The 3M case, according to Forrest, is distinguishing because, they say, in relation to the form of judgment, number one, and number two, because there had been a finding of non-infringement below in the district court. But remember, below in the district court, 3M attempted to resist the entry of summary judgment on non-infringement by arguing that there was no case for controversy. They said to the district court, we now agree that Barr does not infringe, therefore there is no case for controversy. And yet, the district court entered judgment anyway, because there was consequences under the Hatch-Waxman Act. Did they say they agreed there was no infringement? Absolutely, Your Honor. They conceded it? They conceded it outright. Unlike Forrest here. Forrest here is carefully not conceding infringement. They are not conceding that we do not infringe. So they are not going as far as 3M. And yet, in the 3M case, there was a case for controversy under Article 3 that this court affirmed. Last two points. Counsel said that our injury is speculative. Our injury is not speculative because we will, in fact, no doubt about it, suffer a six-month delay in marketing under all circumstances. It could be longer. It could be out until 2023 if Forrest settles with IVACS. But at a minimum, it's six months. So our injury is not speculative. Congress clearly did not intend to allow this situation to occur. Congress said when we enacted the civil action through patent certainty statute, they said we intend for the courts to exercise Article 3 jurisdiction to the full extent of the law. If you were to accept Forrest's argument here, where essentially meaningless covenants not to sue prevented everybody other than the first filer from going forward, you would be saying to my client, you have no remedy for what is clearly an undeniable loss of their legal right to get approval under ANDA. If there's no more questions, thank you, Your Honor. Thank you, Mr. Hearst. The case is submitted.